IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


TANIA JONES                                                                                      PLAINTIFF

vs.                                      CASE NO.   4:05-CV-01499

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY                                              DEFENDANT


**OPINION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tania Jones appeals the decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Both parties have moved for judgment on the administrative record and submitted supporting briefs. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the ALJ's decision that the Plaintiff is not disabled.[1]

**I.  BACKGROUND**

Ms. Jones was 28 years old at the time of the hearing before the ALJ. Ms. Jones has a high school degree and two years of college. She has past work experience as a home health aide and as a certified nursing assistant (CNA). On March 16, 2003, Plaintiff suffered an injury to her back and right shoulder while lifting a patient while working for Arkansas Hospice. Plaintiff

---

[1] Administrative Law Judge Mark S. Anderson (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated April 29, 2005. [R. at 11-34]. Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on September 23, 2005. [R. at 6-8].

1

received treatment for this injury at St. Vincent Medical Center and was also treated by Dr. Earl Peeples, an orthopedic physician, for approximately three to four months. Plaintiff's claims of disability are not limited to her back and shoulder problems. She also claims that she is disabled as a result of mental impairments and asthma.

Plaintiff claims an onset of disability beginning on August 20, 1999. Defendant argues that no disability benefits may be awarded for the period prior to December 17, 2001. For cause, Defendant points out that Plaintiff previously pursued disability benefits for the period beginning August 20, 1999, but failed to appeal the denial of her claim which was rendered by the Arkansas Disability Determination Service on December 17, 2001.[2] Indeed, it appears that Plaintiff admitted that she filed applications in 2001, but failed to pursue her claims after denial at the initial level. [R. 498; *see also*, 443-444, 445]. The Court agrees with Defendant that the period prior to December 17, 2001 is not relevant to the pending application for benefits.

## II. LEGAL PRINCIPLES

### A. Substantial Evidence Standard of Review

In this action for judicial review pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), the Court must determine whether there is substantial evidence on the record as a whole to support the decision of the Commissioner. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). This Court's review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Substantial evidence is less than a preponderance, but is enough that a reasonable mind

---

[2] (See Def.'s Br. at n. 1, p. 1).

would find it adequate to support the Commissioner's conclusion. *Prosch,* 201 F.3d at *1012*. In determining whether substantial evidence exists, the court will consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel,* 212 F.3d 433, 435-36 (8th Cir. 2000). However, the Commissioner's findings may not be reversed merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994). As long as substantial evidence in the record supports the Commissioner's decision, the decision may not be reversed either because substantial evidence exists in the record that would have supported a contrary outcome, *id.,* or because this Court would have decided the case differently. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**B.      Disability Determinations and the Burden of Proof**

The Social Security Regulations (the "Regulations") prescribe a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 & 416.920 (2003); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *accord Lewis v. Barnhart,* 353 F.3d 642, 645 (8th Cir. 2003). The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and

3

> aptitudes necessary to do most jobs." . . . Such abilities and aptitudes
> include "[p]hysical functions such as walking, standing, sitting, lifting,
> pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing,
> hearing, and speaking"; "[u]nderstanding, carrying out and remembering
> simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to
> supervision, co-workers, and usual work situations"; and "[d]ealing with
> changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § § 404.1521(b), 416.921(b)).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley,* 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis,* 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon, supra.* The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from

[the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed.Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.;* 2 0 C.F.R. § 404.1520(4)(v); *Dixon, supra; Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004)).

## III. COMMISSIONER'S FINAL DECISION

The ALJ found in his April 29, 2005 decision that Plaintiff had severe impairments, including degenerative disc disease, lumbar strain, and sacroiliac strain. [R. 32]. Although Plaintiff alleged additional limitations due to borderline ( low average) intellectual functioning, a mood disorder with depression and anxiety, and a personality disorder, the ALJ found that these impairments were "non-severe" because "[a]ny mental symptomatology she may be occasionally experiencing . . . should/would no more than minimally affect her ability to perform basic work-related impairments." [R. 32-33, finding 5].

The ALJ, in its credibility determination, concluded that Ms. Jones' testimony and subject allegations regarding the severity of her impairments were credible "only to the extent that she would be limited to the performance of no more than a wide range of light work activity and/or sedentary work activity." [R. 32, finding 4]. The ALJ further found that Plaintiff retains the residual functional capacity ("RFC") to perform exertional demands of a restricted range of light work and a full range of sedentary work activity. The restrictions on Plaintiff's restricted range of light work activity include the following: no repetitive lifting over 15 pounds, but Plaintiff retains the ability to frequently lift and/or carry up to 10 pounds; a job that allows her to sit at least 25 percent of the time during the day, and Plaintiff is capable of sitting with normal breaks, for a total of about 6 hours during an 8 hour workday. The ALJ further found that Ms. Jones is capable of standing and/or walking for up to 45 minutes without interruption and for a total of not less than 6 hours in an 8 hour workday. Finally, the ALJ concluded that Ms. Jones has the additional limitation of not being able to perform any pushing or pulling of over 15 pounds of force. [R. 30, 32 at, finding 5].

While the ALJ determined that Plaintiff's limitations prevented her from performing her past relevant work, he called upon a vocational expert to determine whether there were other entry unskilled jobs at the sedentary exertional level which the Plaintiff could perform with her restrictions and to which she could be expected to make an occupational adjustment. [R. 33, finding 11]. To make this determination, the ALJ consulted vocational expert Jerry Miller. Mr. Miller opined that Ms. Jones could perform the positions of service system janitor and call out operator, both of which Mr. Miller considered sedentary.[3] Mr. Miller further verified that such jobs exist in significant numbers in the economy. [R. 31, 33, finding 11].

The ALJ concluded that Plaintiff was not disabled on April 29, 2005. On September 23, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. [R. 6].

## IV. DISCUSSION

### A. The ALJ Posed a Proper Hypothetical Question to the Vocational Expert

Plaintiff argues that the ALJ erred by posing hypothetical questions to Mr. Miller, the vocational expert, that did not encompass Plaintiff's specific limitations. The Court rejects the argument. The question posed by the ALJ to which Plaintiff objects is the first of the three questions, in which the ALJ asked Mr. Miller to assume the following limitations: "Further assume that such individual (with the plaintiff's age, education and work experience) exertionally should not do any repetitive lifting over 15 pounds at a time, but could occasionally do that

---

[3] In his testimony, Mr. Miller identified the sedentary positions of small products assembler and surveillance system monitor as positions that Plaintiff could perform in addition to the position of call out operator. [R. 507-08]. It appears that the ALJ may have mistakenly referenced the position of "service system janitor" in his opinion.

7

throughout the day, no prolonged standing, that is not stand more than 45 minutes at a time before getting off the feet. No pushing and pulling over 15 pounds, and that should be seated, a job that would allow being seated at least 25 percent of the time." Mr. Miller opined that while Plaintiff could not perform her past relevant work, there were other jobs available at the local, regional, and national level, that Plaintiff could perform with those restrictions, such as a small products assembler, surveillance system monitor, and call out operator. [R. 506-08].

Plaintiff's specific objection to this hypothetical is that it failed to include any reference to Plaintiff's mental and psychological impairments. As the Defendant points out, virtually all of the alleged limitations related to mental impairments occurred prior to December 17, 2001, the date Plaintiff's prior disability application was denied. Even so, the ALJ considered the Plaintiff's evidence of impairment prior to December 17, 2001; he just found that the impairments were non-severe and did not cause Plaintiff to be disabled for any continuous twelve (12) month period. The Court agrees with Defendant that the ALJ's conclusions on this point – even considering the pre-December 17, 2001 incidents – are supported by substantial evidence.

Plaintiff has a history of two brief inpatient hospitalizations due to reported exacerbation of severe mental symptomatology. Plaintiff was voluntarily admitted to the Arkansas Hospital from July 11, 1997 through July 18, 1997, based on her primary complaint of "crying all the time" and following an altercation with two other women. At the time of the admission, Plaintiff admitted using cigarettes, alcohol and marijuana over the previous few months to help alleviate stress. Plaintiff's discharge diagnosis was adjustment disorder with mixed emotional features. Her prognosis was determined to be "good with continued treatment and development of better coping skills. [R. 184-187].

8

Between June 20, 2000 through June 23, 2000, Plaintiff's second incidence of inpatient treatment for mental problems occurred. Again, Plaintiff reported that she needed "help with all of the stress." This hospitalization followed the unexpected death of her infant son on October 29, 1999. [R. 169-173]. Plaintiff acknowledged that she expressed a suicidal ideation in order to get admitted immediately after being advised that it would be at least a month before she would be seen in the outpatient clinic. [R. 170]. After being admitted, however, Plaintiff denied any suicidal ideation. Plaintiff's discharge diagnosis was major depressive disorder with alcohol and marijuana dependence. Plaintiff requested Prozac during this second admission and at her continued request, Plaintiff was given Prozac at this time. [R. 171-72].

Records dated May 3, 2003, indicate that Winston T. Wilson, Ph.D. examined Jones[4] and administered a Minnesota Multiphasic Personality Inventory (MMPI-II), a standardized psychological test. The test not only provides a personality profile, but is designed to detect a subject's efforts to manipulate the test. Dr. Wilson concluded that Plaintiff's responses on the MMPI-II indicated that Plaintiff "exaggerated problems perhaps in an effort to present the impression of severe emotional disturbance." [R. 362]. Plaintiff scored 116 on the F (Faking) scale, 51 points higher than the normal range of 50-65.

Based on a total review of all the record evidence, including the treatment Plaintiff sought for alleged mental problems following the ALJ hearing, the Court concludes that no basis exists to disturb the ALJ's determination that Plaintiff's alleged mental impairments only minimally

---

[4] Dr. Wilson examined Plaintiff at the request of Dr. Peeples, Plaintiff's treating orthopedic physician after Dr. Peeples determined that there appeared to be an "anxiety component" to Plaintiff's complaints ih light of the fact that the MRI and bone scan had ruled out identifiable lesions. [R. 366].

9

interfere with her ability to perform basic work-related activities, and thus are "non-severe" impairments. [R. 26]. Accordingly, the ALJ was justified in omitting any reference to Plaintiff's mental impairments in his hypothetical questions posed to the vocational expert. *See Hunt Massanari*, 250 F.2d 622, 625 (8th Cir. 2001)(A proposed hypothetical excludes impairments that are untrue or unsubstantiated); *McGivney v. Apfel*, 228 F.3d 860, 864 (8th Cir. 2000)(hypothetical question need not include impairments that are not supported by the record).

    B.    <u>**The ALJ did not err in assessing Plaintiff's credibility**</u>

Plaintiff contends that the ALJ improperly discounted Plaintiff's subjective complaints of pain and failed to comply with the credibility analysis requirements established by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The Court disagrees. The record shows that the ALJ conducted a proper credibility analysis.

In *Polaski*, the Eighth Circuit listed five factors an ALJ is required to examine when analyzing a claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. While the ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's subjective complaints, he is not required to explicitly discuss each *Pulaski* factor. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ specifically stated that he had considered the *Polaski* factors. [R. 27]. The ALJ found that Plaintiff had reported very restricted daily activities but that such report was inconsistent with the medical findings in the record. The evidence in the record supports the

10

ALJ's conclusion that the claimant's reported limitations appeared to be self-imposed voluntary restrictions or a life-style choice in light of the fact that Plaintiff's medically documented impairments did not support such restrictions. Plaintiff's credibility also suffered because none of her doctors had ever advised her that her condition precluded her from working, nor had she been advised to limit her activities. [R. 27]. *See Tennant v. Apfel*, 224 F.3d 869, 870 (8th Cir. 2000)(absence of physician ordered limitations proper credibility factor to consider); *Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999)(claimant's credibility undermined by lack of significant restrictions placed on him by doctors).

There is a significant amount of evidence in this record to permit the finding that Plaintiff was a malingerer and that she exaggerated her symptoms. In such circumstance, an ALJ may properly discount Plaintiff's reports of pain. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003). For example, Plaintiff first saw Dr. Peeples in April 2003, following the incident in which she hurt her back lifting a patient.[5] During that visit, Dr. Peeples asked Plaintiff to rate her pain on a scale of one to ten with one representing barely perceptible pain and ten representing the most severe pain the entire human race has ever experienced. Plaintiff rated her pain as a seven or eight constantly although the doctor indicated that no significant pain behavior or discomfort was noted. Additionally, when asked about her worst pain, Plaintiff reported it at an 11 or 12. When Dr. Peeples pointed out that she was rating her pain as more severe than any other human had ever experienced, Plaintiff indicated that this was true. Dr. Peeples then asked Plaintiff whether she agreed with this statement, "No one else in the entire world has ever had

---

[5] Dr. Peeples indicated that there were mild degenerative changes in the facet joints at the lower lumbar region and a small annular abnormality at L5-S1, but no major root compression. [R. 22, 373].

pain this bad." Plaintiff indicated that she agreed with the statement. [R. 372].

As yet another example that Plaintiff was feigning her symptoms, on May 22, 2003, Plaintiff was seen by Doin Dahlke, M.Ed., a Certified Functional Evaluator for a functional capacity evaluation, again at Dr. Peeples request. During the evaluation, Mr. Dalke found that Plaintiff had given an unreliable effort, with only 10 of 46 consistency measures within expected limits. Plaintiff was also noted to have exhibited inappropriate pain behaviors during the evaluation. Additionally, Plaintiff was uncooperative, having refused to walk 72 feet for a walking evaluation, yet having demonstrated the ability to walk 200 feet on several occasions while walking back and forth from the waiting room. [R. 25]. *See Curan-Kicksey v. Barnhart*, 315 F.3d 964, 969 (8th Cir. 2003)(Curran-Kicksey's credibility concerning her level of pain and discomfort was undermined by a statement from treating doctor that she histrionically moaned, jumped and grimaced during examinations).

Even with all the evidence suggesting that Ms. Jones was not being truthful about her level of pain and discomfort, the ALJ did not completely disregard her testimony. He accepted that Plaintiff might be experiencing "some periodic pain and discomfort" but he properly noted that not all pain and discomfort is disabling. [R. 28]. Thus, the ALJ did not hold that Plaintiff has no pain, but he found that such pain is not significant enough to eliminate her functional capacity to perform work at any exertional level. The mere fact that working may cause pain or discomfort does not mandate a finding of disability. *Ostronski v. Shater*, 94 F.3d 413, 418 (8th Cir. 1996). Indeed, it is well recognized that a claimant can work despite pain unless that pain is disabling. As the Eighth Circuit has noted, "millions of people do every day." *Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989).

Under the facts of this case and considering the record as a whole, the Court cannot say that the ALJ improperly assessed Ms. Jones' credibility or her subjective complaints of pain.

C. **Impairments in Combination**

The Court rejects Plaintiff's contention that the ALJ erred by failing to consider her ailments in combination. Plaintiff argues that the ALJ failed to consider her mental problems, her asthma or her borderline intellectual functioning. However, none of these conditions merited further consideration by the ALJ. (*See* discussion *supra* regarding Plaintiff's alleged mental and psychological impairments). The ALJ accepted the medical evidence finding that Plaintiff had degenerative disc disease, lumbar strain and sacroiliac strain and that such impairments were severe under the Act. [R. 32, finding 3]. The record does not support a finding that Plaintiff experienced severe asthma, rather the record suggested only that she experienced mild respiratory distress on May 11, 2000. [R. 229]. Additionally, Plaintiff did not list asthma or bronchitis as a condition that limited her ability to work in her disability application. [R. 113]. While the failure to list an impairment in a disability report does not conclusively prevent consideration of the alleged impairment, such omission is significant and may discredit Plaintiff's credibility. *See Spradling v. Chater*, 126 F.3d 1072, 1074 (8th Cir. 1997)(failure to allege disabling mental impairment on application for disability may be considered as credibility factor).

In conclusion, the evidence is insufficient to compel the finding that any of Plaintiff's conditions other than her back impairments were disabling or that they lasted for at least one year. To receive disability benefits, a claimant must establish an impairment lasting at least one year that prevents her from engaging in any substantial gainful activity; claimant bears the burden of proof on this issue. *Ingram v. Chater*, 103 F.3d 598, 601 (8th Cir. 1997). The Court concludes

that the ALJ satisfied his duty to consider the combined effect of all disabling impairments shown by the Plaintiff to affect her ability to work.

### D. The ALJ Correctly Determined Plaintiff's RFC

The Court rejects Plaintiff's contention that the ALJ erred in his determination of her RFC. An ALJ's RFC assessment is acceptable as long as it is supported by some medical evidence based upon the ALJ's independent review of the medical evidence. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). The ALJ based his RFC evidence on the report of Plaintiff's treating physician, Dr. Cynthia Almond, rendered on March 24, 2003. [R. 30, 358]. Thus, the ALJ gave the opinion of Plaintiff's treating physician controlling weight. Other evidence in the record supports the ALJ's determination. (See discussion of evidence in Commissioner's brief at p. 11). In sum, the Plaintiff's RFC, as determined by the ALJ, is well supported by the medical evidence of record.

### E. Duty to Investigate

The Court rejects Plaintiff's argument that the ALJ erred because he failed to order a consultative examination. Consultative exams are only necessary when the medical evidence in the record is inconclusive, or somehow incomplete. 20 C.F.R. §§ 404.1519(b), 416.919(b).

The record does not indicate that the medical records provided were incomplete or the information provided inadequate. On the contrary, the evidence in the record was more than sufficient to permit the ALJ to make a reliable RFC assessment and to conduct the required disability analysis. Additionally, Plaintiff has failed to show that she was treated unfairly or prejudiced by the ALJ's alleged failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993)(claimant must show prejudice or unfair treatment due to failure to develop

the record).

## CONCLUSION

Because substantial evidence exists in the record to support the Commissioner's determination that the claimant Tania Jones is not disabled,

IT IS HEREBY ORDERED THAT the Commissioner's decision be, and it is hereby, AFFIRMED.

IT IS SO ORDERED THIS  16th   day of March, 2007.


                                               /s/Garnett Thomas Eisele
                                               UNITED STATES DISTRICT JUDGE